IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE PAPPAS, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 1:20-cv-00983 ) |
| AUTO CLUB INSURANCE ASSOCIATION, | ) Judge: Manish S. Shah ) |
| Defendant. | ) |

**DEFENDANT AUTO CLUB INSURANCE ASSOCIATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT OR IN THE ALTERNATIVE, TO DISMISS PLAINTIFF'S ACTUAL CASH VALUE PAYMENT AND/OR MULTI-STATE CLASS ALLEGATIONS**

Defendant Auto Club Insurance Association ("ACIA") presents this Memorandum of Law in support of its Motion to Dismiss Plaintiff's Class Action Complaint ("Complaint") pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 12(b)(1), or in the alternative, to dismiss the allegations relating to the payment of actual cash value ("ACV") and/or to dismiss the multi-state class allegations in Plaintiff's Complaint pursuant to FRCP 23. In support of its Motion, ACIA offers the following.

## INTRODUCTION

Plaintiff has filed a purported class action Complaint alleging Breach of Contract (Complaint attached hereto as Exhibit 1, Count I, ¶¶ 58 – 70), and Unjust Enrichment (In the Alternative)(Count II, Complaint ¶¶ 71 – 77). Plaintiff's Breach of Contract claim is based on Plaintiff's allegation that when paying a first party automobile total loss claims, ACIA owed the Plaintiff and the absent class members the ("ACV") of their vehicles or the amount necessary to repair or replace the damaged vehicle with another of like kind and quality, along with

1

mandatory title, registration and license plate fees and taxes (referred to hereinafter collectively as "Registration Fees"). (Complaint ¶¶ 43, 65, 67). Plaintiff claims that ACIA failed to pay the Registration Fees. (Complaint ¶¶68, 69). Plaintiff further alleges that ACIA was unjustly enriched by the alleged failure to pay the full amount of Registration Fees involved with the purchase of a replacement vehicle. (Complaint ¶ 74).

Plaintiff's Complaint should be dismissed because Plaintiff fails to adequately plead breach of contract or unjust enrichment under Illinois law, and because Plaintiff lacks standing to bring his unjust enrichment claim.

Plaintiff's multi-state class allegations should also be dismissed because Plaintiff cannot bring claims on behalf of a multi-state class, and the Complaint lacks sufficient factual allegations to support a multi-state class. Plaintiff incorrectly asserts that the purported claims present common questions of law and fact which are appropriate for class wide disposition. Additionally, Plaintiff lacks standing to bring an action under the laws of any state other than Illinois. For these reasons, Plaintiff's allegations for any claims beyond the state of Illinois should be dismissed.

A. **PLAINTIFF'S CLAIMS MUST BE DISMISSED AS "ACTUAL CASH VALUE" OR "AMOUNT NECESSARY TO … REPLACE" IS THE LIMIT OF ACIA'S LIABILITY FOR TOTAL LOSS – NOT THE AMOUNT IT PROMISED TO PAY IN THE EVENT OF TOTAL LOSS**

Plaintiff alleges in his Complaint that ACIA has breached its insurance contract by failing to pay full ACV or the amount necessary to replace, including Registration Fees (Complaint ¶¶ 43, 65, 67). This argument fails, however, pursuant to a very recent Northern District of Illinois case with similar facts and allegations to the case at bar. *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 16439 ("*Coleman II*"). In *Coleman II*, the Plaintiff argued that the Defendant's failure to pay sales tax as part of a total loss settlement constituted a breach of the

2

insurance contract. *Id*, at 2. Just as in the case at bar, Plaintiff's insurance policy in *Coleman* stated that "the limit of USAA's liability for total loss is 'the actual cash value of the vehicle.'" *Id*. On January 30, 2020, The Honorable Virginia M. Kendall held that the policy "makes clear" that ACV "is the limit of (USAA's) lability for total loss – not the amount it promises to pay in the event of total loss." *Id* at 9. Thus, Judge Kendall granted Defendant's Motion to Dismiss both the individual and putative class claims, stating "Because there is no language in the policy or the related letters that obligates Defendants to pay Plaintiff the 'actual cash value' of her vehicle in the event of a total loss, Plaintiff fails to state breach of contract claims against Defendants." *Id*, at 10. ACIA asks the Court to follow Judge Kendall's holding and to dismiss Plaintiff's claims in their entirety.

### B. **PLAINTIFF'S CLAIMS MUST BE DISMISSED AS "ACTUAL CASH VALUE" PAYMENTS UNDER ACIA'S INSURANCE POLICY AND ILLINOIS LAW DO NOT INCLUDE PAYMENT OF REGISTRATION FEES**

An insurance policy is a contract, and as such, its interpretation is governed by the rules applicable to contract interpretation. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.,* 223 Ill.2d 407, 416, 860 N.E.2d 280, 285 (2006). If the provisions of the insurance policy are unambiguous, the provisions will be applied as written, unless they contravene public policy. *Founders Ins. Co. v. Munoz,* 237 Ill2d 424, 930 N.E.2d 999, 1003-1004 (2010).

The plain language of the ACIA insurance policy does not require the payment of Registration Fees when an ACV payment is made. Under the relevant portions of both the Comprehensive and Collision Coverage of Part V – Car Damage Coverages, ACIA agrees to pay "… *for **loss** ... to the **insured car** …*". (Policy attached hereto as Exhibit 2, at p.12)(bold in original). The policy defines "Loss" as "… *direct and accidental physical damage to or theft of*

3

*the **insured car** … **Loss** does not include consequential damages such as diminished value of the **insured car**.*"

(Policy at p.12)(bold in original)

The policy does not include a promise to pay for Registration Fees relating to a replacement vehicle.

**1. AN "ACTUAL CASH VALUE" PAYMENT UNDER ACIA'S INSURANCE POLICY DOES NOT INCLUDE REGISTRATION FEES.**

Under the Limit of Liability provision of Part V – Car Damage Coverages, ACIA's insurance policy states:

1. ***Our*** *Limit of Liability for **loss** shall not exceed the lesser of:*

   a. *The actual cash value at the time of **loss** of the stolen or damaged property. Actual cash value includes deduction for **depreciation**; or*
   b. *The amount necessary to repair or replace the stolen or damaged property; or*
   c. *Any applicable Limit of Liability shown on the Declaration Certificate.*

(Policy at p.14)(bold in original)

Regarding how ACV is determined, the policy provides:

2. *Actual cash value is determined by market value, age and condition at the time the **loss** occurred. ...*

(Policy at p.14)(bold in original)

The decision issued by Judge. Kendall on July 31, 2019, in the first *Coleman* decision *(Coleman v. Garrison Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 127940 ("*Coleman I*")), is directly on point. Like the present case, *Coleman I* was a purported class action brought by an auto insured against her auto insurer, alleging breach of contract for not paying sales tax and title transfer fees in the payment of ACV in an auto total losses. In addition to stating the vehicle's ACV was the limit of USAA's liability, it defined ACV as "the amount it would cost, at the time

of loss, to buy a comparable vehicle." The policy did not define "actual cash value" as excluding the costs of sales taxes or title fees.

Similar to the allegations by Plaintiff in the Complaint herein, the Plaintiff in *Coleman I* argued that since Registration Fees are "necessary and mandatory" vehicle replacement costs in Illinois, they must be included in the policy's definition of "the amount it would costs … to buy a comparable vehicle." *Id* at 5. In rejecting this argument, and granting the insurer's Motion to Dismiss, Judge Kendall recognized the distinction between the cost "to buy" a comparable vehicle, and the cost "to replace" a vehicle. Judge Kendall stated:

> (T)he policy does not define "actual cash value" as the amount it would cost Plaintiff to "replace" her vehicle – i.e., to buy a comparable vehicle with clear title or a comparable vehicle plus sales tax. Instead, the policy defines "actual cash value" as "the amount it would cost, at the time of loss, to *buy*" – not replace – "*a comparable vehicle*." The definition goes on to state that a comparable vehicle "is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition." This definition is thus limited to the purchase price of the vehicle itself, and does not include attendant "replacement costs" like sales tax, title fees, registration fees, or the like. Nothing in the plain language of the policy provisions Plaintiff cites as the basis for her claims can reasonably be construed as an express promise to pay sales tax and title fees, and Plaintiff does not point to any other provisions in the policy that Defendants breached.

*Id*. at 8.

Similarly, the District Court for the Central District of Illinois dismissed a similar suit against another auto carrier in *Sigler v. GEICO*, 2019 U.S. Dist. LEXIS 82431 (C.D.Ill. 2019). The policy at issue in *Sigler* limited recovery to ACV of the property at the time of loss. The policy went on to define ACV as "the replacement cost of the auto or property less depreciation or betterment." *Id*. at 2. The insurer paid the value of the vehicle, less depreciation, but did not pay any taxes or fees. *Id* at 3. In dismissing the Complaint, the Court in *Sigler* stated that the policy did not promise insureds they would be reimbursed Registration Fees without first incurring such costs. *Id.* at 8.

5

The insurance policy language at issue in the case at bar is even stronger than the insurance policy language at issue in *Coleman* and in *Sigler*. In the case at bar, ACIA's limit of liability is the lesser of ACV, or the amount necessary to replace the stolen or damaged property, or the Limit of Liability on the Declaration page. The policy states that ACV is determined by market value, age and condition at the time of loss. Under Illinois law, market value "is the price which a willing purchaser will pay to a willing seller in a voluntary transaction." See, *In Re Estate of Voss*, 55 Ill.2d 313, 303 N.E.2d 9, 11 (1973). It is the retail price, not the cost to replace the vehicle, that determines market value. *People v. Briseno*, 2 Ill.App.3d 814, 277 N.E.2d 743, 744 (2d Dist. 1972).

As the above quote from the *Coleman I* decision states, a vehicle's retail price or purchase price "does not include the attendant "replacement costs" like sales tax, title fees, registration fees, or the like." Registration Fees are costs associated with the replacement vehicle. Registration Fees are not part of the insured vehicle's market value, age or condition.

Thus, this Court should follow the decisions in *Coleman I* and *Sigler* and dismiss Plaintiff's allegations relating to the payment of ACV.

## 2. ILLINOIS LAW DOES NOT REQUIRE THE PAYMENT OF SALES TAXES AND REGISTRATION FEES IN "ACTUAL CASH VALUE" PAYMENTS.

ACIA's insurance policy provision permitting the payment of up to ACV for total losses, and then using market value to determine ACV, is in accordance with Illinois law. Under the Illinois Insurance Code ("Code"), 50 Ill.Adm.Code 919.80, when an insured vehicle is determined to be a total loss, and the insurance policy provides that the claim will be adjusted on the basis of ACV or the replacement of the vehicle,

> *2) The company may elect to pay a cash settlement. The company shall use one of the following methodologies to determine the market value of the insured vehicle: The cash*

> *settlement may be based upon the retail value of the vehicle as determined from one of the following sources...* (Emphasis added)

50 Ill. Adm. Code 919.80(c)(2). The Code specifically instructs insurers to use market value in making an ACV payment. The methodologies that the Code lays out for insurers to use in determining market value, all relate to the price of the vehicle. These methodologies do not include Registration Fees.

The Code does require the payment of sales tax and transfer and title fees, **but only when a replacement vehicle is provided**. In particular, the Code states:

> A) *If a replacement vehicle is provided, the company is required to pay the applicable sales tax and transfer and title fees.*
>    i)   ***If a cash settlement is provided, and if*** *within 30 days after the receipt of the settlement by the insured,* ***the insured has purchased or leased a vehicle, the company is required to reimburse the insured for the applicable sales taxes and transfer and title fees incurred on account of the purchase or lease of the vehicle,*** *but not exceeding the amount payable on account of the value of the total loss vehicle...* (Emphasis added)

50 Ill. Adm. Code 919.80(c)(3)(A)(i).

As was held by the Court in *Sigler*, cited above, the obligation to pay Registration Fees under the Code is a reimbursement to an insured and "only arises for insurers after cash settlements when the insured has purchased or leased a vehicle." There is no requirement in Illinois law that Registration Fees be paid in an ACV payment. Thus, Plaintiff's ACV allegations should be dismissed.

### C. <u>**PLAINTIFF'S REQUEST FOR INJUNCTIVE RELIEF SHOULD BE DISMISSED FOR LACK OF STANDING UNDER RULE 12(b)(1).**</u>

In order for a plaintiff in federal court to pursue injunctive relief, they must establish Article III standing. *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 958 (N.D. Ill. 2016). See also, *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)(a plaintiff "bears the burden of showing that he has standing for each type of relief sought"). In order to have standing to seek injunctive

relief, a plaintiff "must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical …" Summers, 555 U.S. at 493. "(T)o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights." *Scherr v. Marriott Int'l., Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013).

Plaintiff's injunctive relief claim fails because he has not, and cannot, allege that there is an "actual and imminent" risk of injury if the injunctive relief is not granted. Any alleged future harm to Plaintiff from ACIA's alleged conduct would be based on Plaintiff suffering another automobile total loss claim in the future. However, it is purely speculative to assume that Plaintiff will continue to insure his vehicle with ACIA, and that he will suffer another total loss claim. *Jimenez v. Waller*, 498 F. App'x 633, 635-636 (7th Cir. 2012) (finding that the plaintiff lacked standing to seek injunctive relief because any possibility that the defendant would harm her in the future depended on mere speculation about unforeseeable events). Because Plaintiff fails to establish that it is likely he will suffer future harm, let alone "imminent" risk of harm, Plaintiff lacks standing to pursue a claim for injunctive relief. Therefore, Court II, Injunctive Relief, of the Complaint, should be dismissed.

### D. **PLAINTIFF'S MULTI-STATE CLASS CLAIMS SHOULD BE DISMISSED BECAUSE THE PLAINTIFF'S COMPLAINT DOES NOT MEET THE REQUIREMENTS FOR CLASS CERTIFICATION.**

To maintain a class action, a plaintiff "must affirmatively demonstrate [their] compliance with Rule 23." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33, 133 S.Ct. 1426 (2013). Rule 23(d)(1)(D) authorizes the Court to strike class allegations where it is plain from the pleadings that class certification is inappropriate. *See, e.g., Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming District Court's granting of

motion to strike class allegations); *Vandenbrink v. State Farm Mut. Auto. Ins. Co.,* 2012 U.S. Dist. LEXIS 108696 at 8 (M.D. Fla. 2012) (striking class allegations where "Given the nature of the claims and individual factual inquiries required, it is apparent the individualized issues are predominant and this suit cannot proceed as a class action").

In this case, Plaintiff seeks to certify a multi-state class of ACIA's insureds across at least eight different states (See Complaint ¶¶16, 34 – 38, 54, 56(c), 64 and 77). Plaintiff's proposed class involves the application of the laws from numerous states, as well as interpretation of insurance policy language in light of each of those state's laws, statutes and regulations, precluding any finding of commonality or predominance as required by Rule 23. Additionally, Plaintiff's Complaint does not assert sufficient facts concerning ACIA's alleged conduct outside of Illinois to support the requirements of Rule 23.

1. **DIFFERENCES IN STATE LAW AND THE REQUIREMENT OF INDIVIDUALIZED CLASS MEMBER PROOF PRECLUDE CERTIFICATION OF PLAINTIFF'S PROPOSED MULTI-STATE CLASS.**

Plaintiff attempts to characterize his proposed multi-state class action as a matter of basic contract interpretation that will be uniform for all class members in the various states in which ACIA issues insurance policies. *See* Complaint ¶ 56(c). Contrary to Plaintiff's assertions, however, the contracts (ACIA's insurance policies) that this action is based on incorporate, and must be interpreted in light of, the laws, statutes and regulations of the various states in which those contracts are issued. This requires individualized inquiries into, and the application of, various states' laws governing ACIA's obligations with respect to the settlement of individual total loss claims. Further, the proposed multi-state class would necessitate presentation of individualized class-member proof to support the alleged claims. These factors preclude any finding of commonalty and predominance in this action as required by Rule 23, and render

Plaintiffs class definition inherently overbroad and inappropriate. *In re Motions to Certify Classes Against Court Reporting Firms for Charges Relating to Word Indices,* 715 F. Supp. 2d 1265, 1274 (S.D. Fla. 2010) (discussing requirements under Rule 23(a) and Rule 23(b)(3) and stating that to maintain a multi-state class action, a plaintiff must demonstrate "common questions of law or fact" that "predominate over any questions affecting only individual members").

### A. Differences in state insurance laws prevent certification of Plaintiffs proposed multi-state class claims.

If Plaintiff's multi-state class allegations are not dismissed, adjudication of this case would require the Court's analysis and application of the varying insurance laws of numerous states where proposed class members reside. The differences in each state's insurance laws, statutes and regulations destroy any possible finding of commonality and predominance with respect to the proposed multi-state class. *See Klay v. Humana, Inc.,* 382 F.3d 1241, 1261 (11th Cir. 2004) ("Variations in state law may swamp any common issues and defeat predominance."); *see also In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1015 (7th Cir. 2002) (reversing certification of multi-state class and noting "[n]o class action is proper unless all litigants are governed by the same legal rules").

Each state has its own unique body of insurance law codified in common law, statutes, regulations and administrative guidance that governs an insurer's obligations with respect to the settlement of insurance claims. *See Peoples v. Am. Fid. Life Ins. Co.,* 176 F.R.D. 637, 642 (N.D. Fla. 1998) (noting "[t]here is no federal insurance code; each State has its own insurance code, as well as its own Department of Insurance which in turn has its own administrative regulations"). As a general proposition, courts have found that the variations in insurance laws across states make actions that require application of those laws ill-suited for class treatments.

*See Id.* (denying certification of multi-state class in action against insurer finding that the determination of plaintiffs' multi-state claims would require analysis of "the law of each jurisdiction where the product was sold" to determine "whether the actions complained of were indeed unlawful…a question of tremendous complexity and difficulty"); *see also Hammett v. American Bankers Insurance Co.,* 203 F.R.D. 690, 701 (S.D. Fla. 2001)(denying class certification and noting "there is little uniformity with respect to state [insurance] laws governing whether Defendants are in breach").

In order to demonstrate a breach of the contract, or for ACIA to defend against Plaintiff's claims of unjust enrichment, each applicable state's statutes and common law would need to be individually analyzed across every claim. States take varied approaches regarding whether insurers are obligated to pay Registration Fees as part of total loss settlements. For example, certain states statutes appear to require an insurers to include sales taxes in certain circumstances when determining ACV on an auto total loss, but not to include title transfer fees. See*, N.Y. Comp. Codes R. & Regs. Tit. 11* § 216.6(b)(2)(1982), and *NY OGC Opinion* No. 08-10-13 (attached hereto as Exhibit 3)("an insurance company is not required under New York Insurance Law or regulations promulgated thereunder to include title transfer costs associated with the purchase of a replacement vehicle in determining the actual cash value of a motor vehicle that suffered a total loss"). Other states, including Illinois where this case is brought, only require the payment of sales taxes and transfer and title fees after the insured actually replaces the vehicle. See*, Ill. Admin. Code* tit. 50 § 919.80(c)(3)(A)(i), cited and discussed above. Even in states that require the payment of Registration Fees, the type and amount of fees insurers are obligated to pay varies significantly based on factors including but not limited to, the age, weight and price of the vehicle in question.

The differences in state statutes and regulations, which are incorporated into the insurance policies at issue through law and the policies themselves, preclude certification of Plaintiffs proposed multi-state class. See, *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1085 (6th Cir. 1996) (denying certification and finding "[i]f more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").

      **B.**    **The necessity of individualized class member proof precludes certification of Plaintiff's proposed multi-state class.**

The individualized proof necessary to establish breach of contract pursuant to the varying laws, statutes and regulations in the states where the putative class members reside also renders it impossible for common questions of law and fact to predominate in this case. For example, in Illinois each class member will have to submit proof that they in fact replaced the vehicle within 30 days and that they submitted proof of replacement to ACIA within 33 days of the settlement of their claim. See, *Ill. Admin. Code* tit. 50 § 919.80(c)(3)(A)(i). Further, in states where potential Registration Fees are calculated based on the age, weight and/or price of the insured's vehicle, each class member will have to submit individualized documentation regarding the characteristics and value of their vehicles, and the calculations would then have to be made class member-by-class member based on each such state's guidelines. Absent this extremely individualized proof, class members cannot establish the requirements of their causes of action - that ACIA had a duty to pay Registration Fees to each class member in each state and that ACIA breached that duty. Moreover, to establish the elements of Plaintiffs injunctive relief cause of action, class members would have to put forth evidence that they are current ACIA policy holders and that they are under threat of suffering specific and particular injuries in fact.

*See Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009)*; see also, Scherr v. Marriott Int'l, Inc.,* 703 F.3d 1069, 1074 (7th Cir. 2013)(stating that "to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights"). These individualized inquires and the proof necessary to establish Plaintiff and the proposed multi-state class member's claims will result in mini-trials not only with respect to liability, but also with respect to the amount of potential damages for each putative class member.

There is simply no set of proof common to the entire multi-state class that could be presented to establish the elements of Plaintiff's causes of action. This lack of common proof and the requirement of intense individualized inquiries that would necessarily predominate this action make Plaintiff's proposed multi-state class claims inappropriate. See, *Chilton Water Auth. v. Shell Oil Co.,* No. Civ. A. 98-T-1452-N, 1999 WL 1628000, at 6-8 (M.D. Ala. May 21, 1999) (granting motion to strike class allegations because multi-state class of fraud, negligence, and punitive damages claims declared unmanageable due to differences in state law). Furthermore, Plaintiff's proposed multi-state class includes individuals who were not harmed by ACIA such as policy holders in states like New York. See, *OGC OP.* No. 08-10-13 quoted infra at page 11, as finding that under New York law, insurers are not required to include title transfer costs when determining ACV on auto total losses. Class certification is properly denied where the purported class "impermissibly includes members who have no cause of action as a matter of law"). *Walewski v. Zenimax Media, Inc.,* 502 F. App'x 857, 861 (11th Cir. 2012). Plaintiff's multi-state class allegations should, therefore, be dismissed.

2. **PLAINTIFF'S COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUPPORT THE PROPOSED MULTI-STATE CLASS.**

Plaintiff's Complaint does not allege any specific facts concerning ACIA's alleged conduct across multiple states, or the proposed multi-state class members' actual entitlement to Registration Fees sufficient to establish the requirements of Rule 23. *See Bauer v. Dean Morris, L.L.P.,* Civil Action No. 08-5013, 08-5014, 2011 WL 3924963, at *2 (E.D. La. Sept. 7, 2011) ("[c]lass allegations may be Dismissed where a complaint fails to plead the minimum facts necessary to establish the existence of a class satisfying Rule 23's mandate"). The only specific factual allegations presented in Plaintiff's complaint concern ACIA's alleged conduct in Illinois and pertain exclusively to the proposed Illinois-based class. For example, Plaintiff cites to specific insurance policy forms issued in Illinois (*See* Complaint ¶ 21), and then issues a blanket allegation that on information and belief the form "is a standard policy form that has been in use ACIA [sic] for its Automobile Insurance Policies across the states in which it provides coverage." Complaint ¶22. This statement is nothing more than speculation and conjecture in an attempt to create an improper multi-state class. Further, while Plaintiff does include a broad statement that "at least twenty-eight states specifically require, through applicable statute or regulation, that insurers pay all monetary title, registration and license plate fees in connection with a total loss" the footnote to this statement indicates that four of the eight states included in Plaintiff's putative class (Michigan, New York, Pennsylvania and Wisconsin) do not maintain such requirements. *See* Complaint ¶ 37, n.4. Plaintiff fails to identify any authority for the proposition that Registration Fees are in fact owed as part of the replacement of vehicles in half of the eight states in which Plaintiff indicates ACIA writes insurance policies and whose insureds are part of the proposed class. In a case with very similar allegations to this case, the United States District Court for the Middle District of Florida denied certification of a proposed eight-state class when Plaintiff failed to provide citations or authority "showing that each state charged

mandatory tag and title transfer fees – a prerequisite to a claim that Defendants owed putative class members such fees" See *Jones v. Government Employees Ins. Co.*, 2019 WL 1490703 at 8. (M.D. Fla. 2019). Plaintiff's Complaint fails to include anything but conclusory allegations concerning ACIA's conduct outside of Illinois. Plaintiff fails to identify any other insured who had a claim outside of Illinois or to whom ACIA failed to pay applicable fees. Plaintiff's Complaint, therefore, does not adequately allege multi-state conduct by ACIA or the relevant law applicable to the proposed multi-state class, and Plaintiff's claims on behalf of the multi-state class should be dismissed.

### E. PLAINTIFF LACKS STANDING TO REPRESENT THE PROPOSED MULTI-STATE CLASS.

Plaintiff's attempt to allege a multi-state class must also fail as Plaintiff lacks standing to present the claims of any class member outside the State of Illinois. Plaintiff, an Illinois resident, does not have standing to represent any non-Illinois class members whose claims are based on non-Illinois law. *See Schultz v. Am. Family Mut. Ins. Co.*, 2005 U.S. Dist. LEXIS 38848, 2005 WL 5909003, (N.D. Ill 2005) (dismissing any class claims based on violation of wage laws of any states other than Illinois where the only named Plaintiff lacked standing to sue for violations of other states' statutes). *See also Clark v. Aaron's, Inc.,* 914 F. Supp. 2d 1301, 1311 (N.D. Ga. 2012) (dismissing claims on behalf of proposed subclasses due to named Plaintiff's lack of standing). For these reasons, Plaintiff lacks standing to bring the proposed multi-state class claims and these claims should therefore be dismissed.

### CONCLUSION

For the foregoing reasons, ACIA respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice, or in the alternative, dismiss with prejudice Plaintiff's allegations regarding the payment of actual cash value and Plaintiff's multi-state allegations.

15

Respectfully submitted this 18th day of February, 2020.

/s Nick Papastratakos
Nick Papastratakos (6194210)
Hilbert & Power, Ltd.
77 West Washington Street
Suite 1217
Chicago, Illinois 60602

Attorneys for Auto Club Insurance Association